IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Ronald Magwood, ) | |
| ) | Civil Action No. 6:10-2936-MBS-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this district, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on May 22, 2007, alleging that he became unable to work on October 1, 2001. The applications were denied initially and on reconsideration by the Social Security Administration. On December 6, 2007, the plaintiff requested a hearing. At the hearing, the plaintiff amended his alleged onset date to

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

February 11, 2005 (Tr. 25).[2] The administrative law judge ("ALJ"), before whom the plaintiff and Feryal Jubran, a vocational expert, appeared on October 14, 2009, considered the case *de novo*, and on January 22, 2010, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on September 9, 2010. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2006.
>
> 2. The claimant has not engaged in substantial gainful activity since February 11, 2005, the amended alleged onset date. (20 C.F.R. §§ 404.1571 and 416.971 *et seq.*)
>
> 3. The claimant has the following severe impairments: disc bulge and ulnar neuropathy (20 C.F.R. §§ 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520, 404.1525, 404.1526, 416.920(d), and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §

---

[2] The plaintiff had previously filed an application for disability insurance benefits (*see* Tr. 54). His application was denied on reconsideration on February 10, 2005 (*see* Tr. 55). The plaintiff requested a hearing before an ALJ, but withdrew his request, and the ALJ dismissed his request for a hearing (Tr. 54). Consequently, the February 10, 2005, decision on reconsideration became the Commissioner's final decision (Tr. 55). *See* 20 C.F.R. § 404.921 (2011).

404.1567(b). Specifically, the claimant is able to lift and carry 10 pounds with either upper extremity; he can lift a maximum of 20 pounds, frequently with his left upper extremity and occasionally with his right upper extremity. He is able to stand, walk, and sit, each for 6 hours in an 8-hour work day, with the freedom to alternate between sitting and standing. The claimant is capable of climbing stairs and ramps, without limitation, but should avoid climbing ropes, ladders or scaffolds. The claimant is able to perform other postural activities occasionally. He can push or pull occasionally, but not forcefully and within the pound limits stated above. The claimant is capable of frequently reaching and performing gross manipulations, but not the fine manipulations such as pinching to pick something up or inspecting using his fingertips. The claimant can drive, concentrate sufficiently to perform at least simple tasks, and is able to get along with people. Lastly, the claimant must avoid vibration.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant was born on July 13, 1958 and was 46 years old, which is defined as a younger individual age 18-49, on the amended alleged onset date. (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404. Subpart B, Appendix 2).

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from February 11, 2005, the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing

substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct

5

>a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff, age 52 at the time of the ALJ's decision, has a high school education and past work experience as a laborer, logging driver, fork lift operator, dump truck driver, and skidder operator (Tr. 29-31, 44, 115, 153, 158).

A 2004 x-ray report notes shallow bulges at L4-5 and L5-Sl without canal stenosis and early facet arthropathy at L5-S1 (Tr. 216-17). A 2004 EMG study of the plaintiff's upper extremities showed bilateral ulnar neuropathy localized to the elbow (Tr. 297-98).

The plaintiff received treatment at Sea Island Medical Center ("SIMC") for low back pain and bilateral upper extremity numbness. Treatment notes show that the plaintiff had a normal gait and posture (Tr. 238-44, 267-72). The plaintiff was able to heel to toe walk, tandem walk, and stand on one leg at a time (Tr. 238, 268-69).

On December 13, 2004, Kelly Clay, M.D., a physician at SIMC, noted the x-ray and EMG study and gave the following opinion:

>[The plaintiff] is very symptomatic with bilateral upper extremity numbness. Patient also complains of severe low back pain. He is unable to have an MRI secondary to a metal plate in his skull. A CT scan of the lumbar spine revealed L4-L5 and L5-S1 disc bulging. This physical finding can definitely cause pain. His symptoms have not been amendable to medical management. Due to the fact that he is uninsured, he does not have access

> to neurosurgery or orthopedics for surgical intervention. I feel that this patient should be considered permanently disabled due to these objective findings.

(Tr. 299).

On November 20, 2006, the plaintiff presented to SIMC complaining of stomach problems and pain in his hands (Tr. 239). On January 5, 2007, he complained of back pain, but he reported no problems with mobility and stated that he did not use an assistive device (Tr. 225). On February 20, 2007, he again complained of back pain and numbness in his hands and legs (Tr. 237). On June 18, 2007, the plaintiff complained of abdominal pains, dizziness when he sits up, numbness in both hands and legs, and back pain (Tr. 270). On July 17, 2007, he returned to SIMC complaining of right leg and knee pain and numbness in his hands and legs (Tr. 269). He complained of stomach pain and numbness in his legs and knees on a visit to SIMC on October 18, 2007 (Tr. 267).

In July 2007, Leland Stoddard, M.D., a consultative physician, evaluated the plaintiff. While the plaintiff had some decreased lumbar and cervical range of motion, he had normal range of motion in his shoulders, elbows, and hands. He also had normal reflexes in his upper extremities. Some diminished sensation in the median nerve distribution was noted compared to the ulnar, but Tinel and Phalen signs were negative. Dr. Stoddard noted a flat foot deformity on both sides with some stiffness on forced inversion, but stated that the plaintiff did not complain much about his feet other than to say they "go numb" from time to time. Dr. Stoddard opined that the claimant was likely disabled from heavy and medium occupations requiring any significant forceful or repetitive use of the upper extremities. Dr. Stoddard also stated that lower back restrictions including enforced sitting and vibrating machinery were also needed (Tr. 250-54).

In August 2007, Charles Fitts, M.D., a State agency physician, reviewed the plaintiff's medical records and assessed his RFC. Dr. Fitts opined that the plaintiff could lift,

7

carry, push, and pull 50 pounds occasionally and 25 pounds frequently; had no postural, visual, or environmental limitations; and could frequently handle and otherwise had no manipulative limitations (Tr. 257-64).

In December 2007, Dale Van Slooten, M.D., a State agency physician, reviewed the plaintiff's medical records and assessed his residual functional capacity. Dr. Van Slooten opined that the plaintiff could lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently; had no postural, visual, or environmental limitations; and could frequently handle and otherwise had no manipulative limitations (Tr. 289-96).

The plaintiff was referred to Charles Rittenberg, M.D., for an additional consultative examination in December 2009 (Tr. 326-28). The plaintiff told Dr. Rittenberg that he smoked three cigars a day and had an occasional wine cooler. During a musculoskeletal examination, the plaintiff was noted to have a pronounced limp favoring his right leg and used a cane to steady himself. He had full range of motion in his knees, elbows, wrists, and ankles. His neurological examination showed muscle strength was 5/5 throughout. While he had subjective decreased sensation in his right lateral leg, no muscle atrophy, tremor, clonus, rigidity, or spasm was noted. Additionally, the plaintiff's fine motor movements were normal (Tr. 327). Dr. Rittenberg indicated that the plaintiff was able to lift and carry up to 10 pounds frequently, lift up to 100 pounds occasionally, and carry up to 50 pounds occasionally; sit five hours, stand four hours, and walk two hours, each, in an eight-hour workday; walk up to one-quarter mile without use of a cane; occasionally reach overhead; frequently use his hands for other activities; frequently operate foot controls; drive; never climb ladders or scaffolds, kneel, crouch, or crawl; occasionally climb stairs and ramps, balance, and stoop. He further noted that the plaintiff claimed it was difficult to stay in one position (Tr. 321-24). Dr. Rittenberg noted that the plaintiff brought a letter from a friend and a preacher describing falling incidents (Tr. 325).

The plaintiff testified at the hearing that he drove approximately 25 miles per week, taking people to town. He said he could not drive too far due to his impairments. He said that he earned money running errands. He stated that he was born in 1958 and was 51 years old. He said he had a high school degree and was able to read, write, and do simple mathematics. He said he could not return to work due to problems with his stomach and numbness. He claimed that his leg would give out on him and that he would fall. He testified that he often drops things because of numbness in his hands. He said that he smoked a cigar to soothe his pain (Tr. 27-28, 31-33, 41).

The ALJ commented at the hearing that the plaintiff was probably limited to light work, perhaps with a sit/stand option. The plaintiff's counsel agreed with that assessment. The plaintiff said that he had trouble paying for medical care (Tr. 35-37, 40).

Vocational expert Feryal Jubran also testified at the hearing (Tr. 43). Ms. Jubran testified that the plaintiff's past work was as a laborer, logging truck driver, forklift operator, dump truck driver, and a skidder operator, all of which required at least medium exertion and were unskilled or semi-skilled (Tr. 44). The ALJ asked Ms. Jubran to assume a person the same age as the plaintiff, with the same education. The person was right-hand dominant; could sit six hours in an eight-hour day; could stand and walk six hours in an eight-hour day; needed the freedom to alternate from sitting and standing; could lift 20 pounds maximum, 20 pounds frequently with his left hand and occasionally with his right hand; and 10 pounds frequently; could climb ramps and stairs without limits; needed to avoid ladders, ropes and scaffolds; could perform other postural activities; could push and pull occasionally; could frequently reach and perform gross manipulation; could not perform fine manipulation; could drive; could concentrate sufficiently to perform simple work; could get along with people; and needed to avoid vibration. Ms. Jubran testified that the person could perform the unskilled, light jobs of sorter, machine tender, and routing clerk. She identified the *Dictionary of Occupational Titles* (*"DOT"*) number for each job and the number

of jobs in the state and national economies (Tr. 45-47). Her answer would remain the same if the ALJ limited the person to occasional lifting of 20 pounds (Tr. 47). She said that the sit/stand option was not addressed by the *DOT* and that she based her testimony on her performance of job analysis (Tr. 48).

## **ANALYSIS**

The plaintiff argues that the ALJ erred by (1) failing to properly consider the opinion of treating physician Dr. Clay; and (2) failing to properly consider his subjective complaints.

### *Treating Physician*

The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 416.927(d)(2)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in Ruling 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

On December 13, 2004, treating physician Dr. Clay opined that the plaintiff's physical findings could cause pain, and his symptoms were not amenable to medical management. He felt that the plaintiff "should be considered permanently disabled due to these objective findings" (Tr. 299).

The ALJ considered Dr. Clay's opinion but gave it "little weight." The ALJ noted that Dr. Clay's treatment notes showed very few clinical findings to support a disabling condition. Furthermore, the ALJ observed that Dr. Clay had not suggested any functional limitations. Finally, the ALJ noted that Dr. Clay's opinion was entitled to little weight because inconsistent with other evidence in the record. (Tr. 18). Also, as noted by the Commissioner, Dr. Clay's opinion was issued prior to February 10, 2005, the date that the Commissioner found the plaintiff was not disabled in a prior determination (*see* Tr. 55).

The ALJ gave "great weight" to the opinions from two examining, consultative examiners regarding the plaintiff's limitations on the use of his upper extremities, back restrictions, and need to change positions (Tr. 18). Dr. Stoddard opined that the plaintiff could not perform heavy and medium occupations requiring any significant forceful or repetitive use of the upper extremities and had to avoid enforced sitting and vibrations (Tr. 254). Dr. Rittenberg indicated that the plaintiff was able to lift and carry up to 10 pounds frequently, lift up to 100 pounds occasionally, and carry up to 50 pounds occasionally; sit

11

five hours, stand four hours, and walk two hours, each, in an eight-hour workday; walk up to one-quarter mile without use of a cane; occasionally reach overhead; frequently use his hands for other activities; frequently operate foot controls; drive; never climb ladders or scaffolds, kneel, crouch, or crawl; occasionally climb stairs and ramps, balance, and stoop. He further noted that the plaintiff claimed it was difficult to stay in one position (Tr. 321-24).

The ALJ noted that Dr. Rittenberg reported that the plaintiff fell frequently, but gave that portion of the report little weight (Tr. 18; *see* Tr. 327). The ALJ noted that the basis for Dr. Rittenberg's report was letters the plaintiff brought from a friend and his preacher rather than objective findings (Tr. 325). As argued by the Commissioner, this is a proper basis for discounting medical opinions, and the ALJ reasonably did so here (Tr. 18). *See, e.g., Johnson*, 434 F.3d at 657 (physician's opinion that was based on the claimant's subjective complaints could be rejected); *Mastro*, 270 F.3d at 178 (fact that physician's diagnosis was based largely upon claimant's self-reported symptoms allowed ALJ to assign that physician's opinion lesser weight). The ALJ noted that Dr. Rittenberg's examination of the plaintiff showed that the cane was not medically necessary and that the plaintiff could walk a quarter mile without the cane (Tr. 18; *see* Tr. 322). Moreover, as noted above, an examination in January 2007 showed that the plaintiff had no problems with mobility and did not need an assistive device (Tr. 225).

The ALJ also gave "some weight" to the opinions of two State agency physicians, Dr. Fitts and Dr. Van Slooten, who opined that the plaintiff could perform work at the medium exertion level, limited by the inability to perform frequent handling (Tr. 258-61, 293; *see* Tr. 18-19). While generally rejecting the State agency physicians' conclusions, the ALJ accepted the findings to the extent that they supported a conclusion that plaintiff could perform light work (Tr. 19).

Based upon the foregoing, this court finds that the ALJ properly considered Dr. Clay's opinion and reasonably weighed the medical evidence.

***Subjective Complaints***

The plaintiff next argues that the ALJ failed to properly consider his subjective complaints. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater,* 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)    the individual's daily activities;

(2)    the location, duration, frequency, and intensity of the individual's pain or other symptoms;

13

>    (3)   factors that precipitate and aggravate the symptoms;
>
>    (4)   the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
>    (5)   treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
>    (6)   any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
>    (7)   any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

The ALJ found that while the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with her RFC finding (Tr. 17). The ALJ first noted that the plaintiff testified that he had problems with his legs giving out (Tr. 17; *see* Tr. 32). However, the ALJ observed that the plaintiff had not complained of such problems to his physicians (Tr. 17). The failure to report symptoms to his physicians undermined the plaintiff's complaints. *See Flowers v. Apfel*, No. 98-2112, 1999 WL 150491, at *2 (4th Cir. 1999) (unpublished). Notably, in January 2007, the plaintiff reported no problems with mobility and stated that he did not use an assistive device (Tr. 225). The ALJ also considered the plaintiff's claim that he could not afford treatment, but found the claim was not credible because the plaintiff earned money running errands and was able to buy cigars and alcohol (Tr. 17; *see* Tr. 41, 226, 327). *See Mayle v. Astrue*, No. 9:06-3048-CMC-GCK, 2007 WL 4285383, at *21 (D.S.C. December 3, 2007) (finding ALJ properly considered

claimant's purchase of cigarettes and alcohol when considering claimant's credibility regarding asserted inability to afford treatment).

The ALJ also observed that the medical evidence undermined the plaintiff's credibility (Tr. 17). For example, treatment notes showed that the plaintiff had normal gait and posture and was able to heel-to-toe walk, tandem walk, and stand on one leg (Tr. 238-39, 268-70). Dr. Stoddard noted in July 2007 that the plaintiff had some decreased spinal range of motion, but had normal motion of and reflexes in the upper extremities and few complaints of lower extremity problems (Tr. 251-54). In December 2009, the plaintiff had a limp and used a cane, but he had full extremity range of motion and good muscle strength (Tr. 326). He had some decreased sensation in his right leg, but no muscle atrophy, tremor, clonus, rigidity, or spasms, and his fine motor movements were normal (Tr. 251, 327).

A lack of objective medical evidence may be used as one factor in a credibility analysis, so long as there are other valid reasons to question a claimant's credibility. As the Fourth Circuit Court of Appeals stated in *Craig v. Chater*:

> This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

76 F.3d at 595. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain

15

or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

Based upon the foregoing, this court finds that the ALJ properly considered the plaintiff's credibility and reasonably concluded the plaintiff was not entirely credible.

## **CONCLUSION AND RECOMMENDATION**

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald<br>
United States Magistrate Judge

November 21, 2011<br>
Greenville, South Carolina